The Honorable Van Stone Prosecuting Attorney Nineteenth Judicial District West Benton County Courthouse 100 NE "A" Street Bentonville, AR 72712
Dear Mr. Stone:
I am writing in response to your request for an opinion concerning the Benton County Circuit Court. You state that the Benton County Judge and Benton County Quorum Court are considering the possibility of moving one of the five divisions of the Benton County Circuit Court to a location within the corporate city limits of Rogers. You have presented the following specific questions in this regard:
 Please consider this a request for an Attorney General's opinion on the legality of the Benton County Circuit Court, or a division of the circuit court, regularly conducting court proceedings at a location that is (1) outside Benton County's county seat of Bentonville, and (2) outside Benton County's courthouse complex in Bentonville. Second, may the Benton County Circuit Clerk's Office also lawfully maintain its active circuit court files at a location that is (1) outside Benton County's county seat of Bentonville, and (2) outside Benton County's courthouse complex in Bentonville?
RESPONSE
The law on these issues is currently unclear, in my opinion, and can only be clarified by judicial interpretation of the applicable statutes, or by legislative clarification. Pending such interpretation or clarification, however, it is my opinion in response to your first question that there currently is no clear authority *Page 2 
for establishing another regular or permanent location for the Benton County Circuit Court, or a division thereof, that would be outside the county seat of Bentonville. The answer to your second question is generally "no," in my opinion.
Question 1 — What is the legality of the Benton County Circuit Court,or a division of the circuit court, regularly conducting courtproceedings at a location that is (1) outside Benton County's county seatof Bentonville, and (2) outside Benton County's courthouse complex inBentonville?
Although it is not entirely clear from the wording of your question, I assume as an initial matter that the Benton County Circuit Court would continue to conduct proceedings in Bentonville under the scenario you have outlined. You have not presented any facts indicating that the location outside of Bentonville would replace the Bentonville location. I believe it is clear that the removal of all Benton County Circuit Court proceedings from the courthouse in Bentonville to a location outside of Bentonville cannot be accomplished without moving the county seat; and it is clear that the county seat cannot be changed without a vote of the county electors. Ark. Const. art. 13, § 3. See also A.C.A. § 14-14-302 (Repl. 1998). Regarding the court's location in the county seat, A.C.A. § 14-19-108(a) (Repl. 1998) provides: "There shall be erected in each county, at its established seat of justice, a good and sufficient courthouse and jail." The "seat of justice" as referenced in this statute is the county seat. See Bond, County Judge v. Kennedy,213 Ark. 758, 212 S.W.2d 336 (1948); Warren v. State, 241 Ark. 264,407 S.W.2d 724 (1966), quoting Williams v. Reutzel, 60 Ark. 155, 158,29 S.W. 374 (1895). Echoing A.C.A. § 14-19-108(a),[1] the Arkansas Supreme Court in Reutzel, supra, pronounced:
 In every county of this state there is and must be a county seat. At it the county court is required to erect a good and sufficient courthouse and jail. The county, circuit, and other courts held for the county must sit there. There is no other place designated by law for that purpose. The name "county seat" indicates the object of its creation. It is, as defined by the Century Dictionary, "the seat of government of a county; the town in which the county and other courts are held, and where the county officers perform their functions." When the county seat of a county is removed, and the needful public buildings are made ready for the several courts *Page 3 
holden at the county seat and the respective officers, the next and succeeding terms of the county court and the circuit court and all the other courts for said county of superior or general jurisdiction are required to be held at the new county seat.
60 Ark. at 158 (emphasis added).
This pronouncement that courts must be held in the county seat reasonably follows from subsection 14-19-108(a)'s requirement that the "courthouse" must be constructed at the county seat, given that the term "courthouse" itself connotes the permanent place for holding court. See
Op. Att'y Gen. 2004-285 (citing, inter alia, Black's Law Dictionary (5th ed. 1977) at 320 (defining "courthouse" as "[t]he building occupied for the public session of a court, with its various offices. The building occupied and appropriated according to law for the holding of courts.").
This is not to say, however, that the General Assembly cannot designate, or authorize the designation of, other locations where court may be held. The Arkansas Supreme Court has recognized that "it [is] within the power of the legislature to prescribe the time and place of holding courts. . . ." Sanders v. McClintock, 175 Ark. 633, 300 S.W.2d 408
(1923). In this regard, Amendment 80 to the Arkansas Constitution specifically provides that "[t]he circuit courts shall hold their sessions in each county at such times and places as are, or may be prescribed by law." Ark. Const. amend. 80, § 6(D). Acting under authority of a virtually identical constitutional provision that was repealed by Amendment 80 — former Ark. Const. art. 7, § 12[2] — the legislature in 1885 passed an act creating two judicial districts in Prairie County and providing for circuit court to be held in DeVall's Bluff, outside the county seat of Des Arc. See Holmes v. Waggoner, 189 Ark. 735, 75 S.W.2d 74
(1934). The court in Holmes observed the following in addressing a challenge to the circuit court's jurisdiction in an election contest brought at DeVall's Bluff:
 Section 3 of the act provided that the circuit court should hold the same number of sessions in the town of DeVall's Bluff as by law were held at the county seat of the said county, and at such times as might be designated by law. There can be no doubt that, under the provision of the Constitution above quoted [Ark. Const. art. 7, § 12], *Page 4 
the time and place of holding court was designated by this act, and that DeVall's Bluff was designated as the place for holding the circuit court.
189 Ark. at 736.
There is precedent, additionally, for the General Assembly's enactment of legislation dividing a county into separate judicial districts, and calling for the construction of a new courthouse in a city other than the county seat. As noted by my predecessor, Act 74 of 1883 authorized the establishment of a separate Western Judicial District in Carroll County with a courthouse to be located in Eureka Springs, Berryville being the county seat of the county. See Op. Att'y Gen. 2006-117. Similarly, Act 14 of 1881 established a Western Judicial District in Clay County with a courthouse to be located in Corning, Boydsville being the county seat. Id. See also Law v. Falls, 109 Ark. 395, 159 S.W. 1130
(1913) (discussing Act 100 of 1875, which divided Yell County into two judicial districts and provided for holding chancery, circuit, and probate court separately in Dardanelle, which the Supreme Court observed "did not interfere with the holding of any of the courts at Danville, the . . . county seat.").
In the absence of legislation similar to that noted above, however, there is no clear authority, in my opinion, for establishing another regular or permanent location for the Benton County Circuit Court, or a division thereof, that is outside the county seat of Bentonville. I recognize in this regard that pursuant to A.C.A. 16-13-207, circuit courts may "fix times and places when the court will be in session. . . ." See also A.C.A. § 16-13-210 (Supp. 2007) (authorizing a circuit judge to preside over any proceedings "in the geographical area of the judicial district which he serves . . . subject to . . . notice of the time, place, and nature of the hearing. . . ."). You have not stated whether the Benton County Circuit Court agrees to the location being proposed by the County Judge and Quorum Court. In any event, however, neither A.C.A. § 16-13-207 nor A.C.A. § 16-13-210, in my opinion, authorizes the Circuit Court to establish the regular or permanent location of the court, or a division thereof, as envisioned by your question.
Subsection 16-13-207 states in full:
 (a)(1) Each circuit court may, by a rule or order, fix times and places when the court will be in session for the transaction of business. *Page 5 
However, the scheduled sittings of the court shall not preclude the transaction of business by the court at other times or places.
 (2) No jury, however, shall be convened at a place other than the regular and customary place for holding court in each county or district thereof, as the case may be.
 (b) When any circuit court is duly convened for a regular term, the court may be in session at any time the judge thereof may deem necessary. However, no session of the court shall interfere with any other court to be held by the same judge.
 (c) Two (2) or more circuit courts of the same district may be concurrently in session.
A.C.A. 16-13-207 (Repl. 1999).
This statute plainly is concerned with the matter of scheduling the sessions, or "sittings," of the court. See again Ark. Const. amend. 80, A.C.A. § 6(D) ("The circuit courts shall hold their sessions in each county at such times and places as are, or may be prescribed by law."). This matter of "scheduled sittings" is distinct, in my opinion, from the matter of establishing the court's location as contemplated by your question. Although I have found no specific authority to this effect, I believe the statute likely reflects the fact, as noted by the Arkansas Supreme Court, that "trial judges travel a circuit in which they are required by statute to open court at specified times in various counties within their judicial district. . . ." Alexander v. State, 268 Ark. 384,385-86, 598 S.W.2d 395 (1980). I note, additionally, that subsection16-13-207 appears to reflect a distinction between the "regular and customary place for holding court," A.C.A. § 16-13-207(a)(2), and the "places when the court will be in session," i.e., the "scheduled sittings." Id. at (a)(1). In my opinion, the statute does not speak to establishing the court's "regular and customary" location.
Subsection 16-13-210 is concerned with authorizing a circuit judge to preside anywhere within the judicial circuit. It provides:
 (a)(1) Any circuit judge of this state, at any time while mentally and physically competent and physically present in the geographical area of the judicial circuit which he or she serves as judge, may hear, *Page 6 
adjudicate, or render any appropriate order with respect to any cause or matter pending in any circuit court over which he or she presides, subject to such notice of the time, place, and nature of the hearing being given as may be required by law or by rule or order of the court.
 (2) However, no contested case may be tried outside the county of the venue of the case, except upon the agreement of the parties interested.
 (b) A circuit judge assigned to a cause or matter, either by regular docket assignment or by Supreme Court order, may render or sign orders in that cause or matter in a geographical location other than the judicial circuit in which the cause or matter is pending.
 (c) A retired circuit judge, chancellor, or circuit-chancery judge assigned to a cause or matter by Supreme Court order may render or sign orders in that cause or matter in a geographical location other than the judicial circuit in which the cause or matter is pending.
A.C.A. § 16-13-210 (Supp. 2007).
Like A.C.A. § 16-13-207, subsection 16-13-210 in my opinion offers no support for the proposition that a circuit judge can establish another regular or permanent location for the Benton County Circuit Court, or a division thereof, that is outside the county seat. This statute instead simply establishes a circuit judge's authority to hear matters anywhere within the judicial circuit, consistent with the court's territorial jurisdiction, A.C.A. § 16-88-105 (Repl. 2005 and Supp. 2007). See Davisv. Reed, 316 Ark. 575, 578, 873 S.W.2d 524 (1994) (citing A.C.A. §16-13-210 and observing that "[a] circuit judge has the authority to preside over proceedings in any courtroom, in any county, within the judicial district for which that judge was elected." See also Renfro v.State, 264 Ark. 601, 607, 573 S.W.2d 53 (1978) (rejecting defendant's argument that he was improperly sentenced in the Eastern District of Clay County, after being charged in the Western District, after citing A.C.A. § 16-13-210 and taking judicial notice that "the sentencing judge . . . was the circuit judge for the Second Judicial District at the time of the sentencing of appellant and that all of Clay County is in the geographical area of that district."). *Page 7 
As a final matter in addressing your first question concerning another location for the Circuit Court that would be outside the county seat, I have considered whether A.C.A. § 14-14-301 might be a basis for action by the county in this regard, through the County Judge and Quorum Court. This Code section defines "county seat" and further provides as follows
 (a) A "county seat" shall be defined as the principal site for the conducting of county affairs and maintaining records of the various courts.
 (b) Nothing in this section, however, shall be construed as a limitation on a county to maintain several sites throughout the county for the conducting of county affairs.
A.C.A. § 14-14-301 (Repl. 1998).
This provision is part of the legislation implementing Amendment 55 to the Arkansas Constitution. I believe it is clear as a matter ofconstitutional law that the Circuit Court is not a "local matter" within the jurisdiction of the County Quorum Court. Venhaus v. State, 285 Ark. 23,684 S.W.2d 252 (1985). The court in Venhaus stated as follows in rejecting the Pulaski County officials' claim that the Quorum Court of Pulaski County should set the salaries of circuit court employees, pursuant to Amendment 55:
 The argument is without merit. Traditionally quorum courts have been held to have jurisdiction only over local matters, and a circuit court and its employees are not a local matter. Campbell, County Judge v. Arkansas State Hospital, 228 Ark. 205, 306 S.W.2d 313
(1957). Amendment 55 does not cause us to modify this body of law. The Amendment provides that the quorum court may exercise only "local legislative authority." Section 1(a).
285 Ark. at 25.
This does not necessarily resolve the issue, however, given that the legislature could, by statute, make the Circuit Court's location a "local matter" such that Benton County might establish another, additional place for holding court, outside the county seat. I note in this regard that the County is obliged by A.C.A. § 14-14-802(a)(1) (Repl. 1998) to provide for the administration of justice. See Haynes v. *Page 8 Faulkner County, 326 Ark. 557, 932 S.W.2d 328 (1996) and Villines v.Tucker, 324 Ark. 13, 918 S.W.2d 153 (1996). Additionally, A.C.A. §14-14-803 (Repl. 1998) states that "[t]he power of county government to provide services includes the power to provide necessary and convenient facilities to support the services." The question arises whether authority to locate the court can be implied from these statutes, coupled with A.C.A. § 14-14-301, authorizing other sites "for the conducting of county affairs."
While a definitive resolution of this issue may require judicial or legislative clarification, it is my opinion that in all likelihood such authority cannot reasonably be implied under the current statutes and cases. The General Assembly has imposed the duty upon the respective counties to provide for the necessary services of the administration of justice; and the Arkansas Supreme Court has held that this includes funding expenses of the trial court system not funded by the state, including the costs of courthouse space. Tucker, supra. Regarding the courthouse location, however, A.C.A. § 14-19-108 states only that a courthouse must be erected at the county seat. No act has been passed for Benton County similar to those noted above, authorizing two courthouses in a county with one county seat. In the absence of such legislation, I am unable to conclude that Benton County has the power to establish another regular or permanent location for the Benton County Circuit Court, or a division thereof, outside the county seat of Bentonville.
Question 2 — May the Benton County Circuit Clerk's Office alsolawfully maintain its active circuit court files at a location that is(1) outside Benton County's county seat of Bentonville, and (2) outsideBenton County's courthouse complex in Bentonville?
The answer to this question is generally "no," in my opinion. The circuit clerk is ex officio recorder. Ark. Const. art. 7, § 19. Seealso A.C.A. § 14-14-1301(a)(2) (Supp. 2007). With regard, specifically, to record keeping, A.C.A. § 14-15-401 (Supp. 2007) states:
 (a) There shall be established in each county in this state an office to be styled the county recorder's office, which shall be kept at the seat of justice of each county.
 (b) The county recorder: *Page 9 
 (1) Shall duly attend to the duties of the county recorder's office;
 (2) Shall provide and keep in the county recorder's office well-bound books in which the county recorder shall record in a fair and legible hand all instruments of writing authorized or required to be recorded in the manner provided; and
 (3)(A) May implement electronic filing and searching provisions and procedures under the Uniform Real Property Electronic Recording Act, § 14-2-301 et seq.
 (B) Unless a county recorder has implemented the Uniform Real Property Electronic Recording Act, § 14-2-301 et seq., the transmission of an electronic document to the county recorder has no legal effect.
 (C) A person that seeks to record an electronic document is solely responsible for determining if a county recorder has implemented the Uniform Real Property Electronic Recording Act, § 14-2-301 et seq.
(Emphasis added).
I believe it is clear from the language emphasized above that the court files are to be maintained at the county seat.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] This Code section originally appeared in Crawford Moses Digest of 1921, § 1929.
[2] Article 7, section 12 stated: "The circuit courts shall hold their terms in each county at such times and places as are or may be prescribed by law." This provision was repealed by Ark. Const. amend. 80, § 22.